

**UNITED STATES TRANSPORTATION COMMAND**
508 SCOTT DRIVE
SCOTT AIR FORCE BASE, ILLINOIS 62225-5357

3 September 2021

Maersk Line, Limited
2510 Walmer Avenue, Suite C
ATTN: Patrick McCaffery (Counsel)

SUBJECT: Contracting Officer's Final Decision Regarding Certified Claim, dated 22 December 2020; TCAQ-21-REA-0002; Contract HTC711-16-D-W014

Dear Mr. McCaffery,

This letter provides a Contracting Officer's Final Decision (COFD) regarding a Certified Claim (Attachment 1), submitted by Maersk Line, Limited (MAEI), dated 22 December 2020 in accordance with (IAW) FAR 52.233-1 Disputes (May 2014). The certified claim requests $748,402.32, for "Container Detention (USC [Universal Services Contract]-8, Performance Work Statement (PWS) Section 3.G.4.1 and Exigency Annex Paragraph 8.2), Driver Wait Time (USC-8, PWS Section 3.G.4.2 and Exigency Annex Paragraph 8.7), Port Storage (USC-8, PWS Section 3.G.10), and Reefer Maintenance (USC-8, PWS Section 3.G.4.1.7)" charges incurred on Prime Vendor (PV) cargo due to various delays in cargo transportation.

**1. Description of claim or dispute:**

    a. United States Transportation Command (USTRANSCOM) awarded Contract No. HTC711-16-D-W014 to MAEI for ocean and intermodal distribution services. The purpose of USC-8 was for delivering Defense Transportation System (DTS) cargo around the world (Attachment 2 at 63). DTS cargo consists of military equipment and related supplies including the shipment of Prime Vendor Cargo in support of the Defense Logistics Agency (DLA) Prime Vendor Program (*Id.* at 223).

    b. DLA entered into contracts SPM300-10-D-3373 (Attachment 3) and SPM300-12-D-3571 (Attachment 4), ("PV Contracts") with ANHAM FZCO, LLC ("Anham") for supply of various commodities to US. Government agencies. The Anham contracts provided subsistence products to the U.S. military and other federally funded customers within Afghanistan, Iraq, Kuwait, and Jordan. The Anham PV Contracts require the supplies provided under the contract to be shipped through the DTS (Attachment 4 at 105).

    c. Due to the unique nature of PV Cargo shipments, both the USTRANSCOM USC-8 contract and the DLA PV Contracts have special provisions for the shipment of PV Cargo. See USC-8, Exhibit 3 PWS, Attachment 8, *Shipments of DLA Prime Vendor Cargo* along with the DLA PV Contracts, Statement of Work (SOW), Section IV, *Transportation.* Additionally, each of these contracts required MAEI and Anham to enter into a Prime Vendor Agreement to

**Attachment 2**

2

establish a minimum level of claims processing and dispute resolution procedures. MAEI and Anham entered into a PV Agreement, dated 9 May 2013, (Attachment 5) and subsequently renewed the agreement on 21 January 2016 (Attachment 6). Thus, the USC-8 contract, PV Contracts and PV Agreement required MAEI and Anham to resolve disputes between each other for charges associated with the shipment of PV cargo. Throughout the period of performance of USC-8, it appears that Anham and MAEI complied with their PV Agreement in settling disputes and claims; however, they have failed to resolve these outstanding invoices for various charges. The charges submitted for this certified claim are disputed charges between Anham and MAEI.

    d. On 15 January 2021, USTRANSCOM received a certified copy of the claim dated 22 December 2020 via email from Ms. Toni Moore, Head of Global Process, MAEI. Ms. Moore requested a meeting to discuss the individual details of the claims and how to produce the supporting documentation for the claim. The claim was addressed to both USTRANSCOM (Contracting Officer William Henderson) and DLA Troop Support (Contracting Officers Jamie Shuster and Katie Cosenza).

    e. On 28 January 2021, the USTRANSCOM Directorate of Acquisition (TCAQ) received the incomplete supporting documentation for the subject claim through a DoD File SAFE transmission. Upon receipt, TCAQ verified MAEI submitted copies of 45 invoices without adequate documentation to support the claims. The invoices are original invoices submitted to Anham along with Microsoft Excel spreadsheets and portable document format (.PDF) documents to support the claim. The dates of the invoices range from December 2016 to September 2019. In total, MAEI submitted invoices totaling $1,060,622.14 ($312,219.82 higher than the sum certain claimed). The invoices submitted total $546,762 in container detention, $296,007.31 in port storage or off dock storage, $2,310 in Exigency Driver Wait Time, and $215,542.83 in reefer maintenance changes (Attachment 7).

    f. On 15 March 2021, the Contracting Officer issued a notice of extension in accordance with (IAW) FAR 33.211(c)(2) anticipating a final decision issuance of no later than 25 June 2021 in anticipation of identifying or receiving complete documentation.

    g. On 23 April 2021, USTRANSCOM received a notice from Mr. Robert Korruch, counsel for Maersk Line, Limited, that a petition (Attachment 8) was submitted to the Armed Services Board of Contract Appeals (ASBCA), requesting an order directing the DLA Contracting Officer to render a decision on the subject claim.

    h. On 25 June 2021, a decision was not rendered and USTRANSCOM requested an extension from MAEI to 24 July 2021 to continue to seek adequate substantiation. A COFD was not issued prior to 24 July 2021. Coordination between MAEI and USTRANSCOM was ongoing to determine a final decision date.

    i. On 9 August 2021, USTRANSCOM received a notice the ASBCA issued an order (Attachment 9) in response to the petition filed by MAEI on 23 April 2021, which was docketed by the ASBCA on 6 May 2021. The order requires a COFD from USTRANSCOM within 30 days of the order (Dated 6 August 2021) or the contractor could consider the failure to issue a COFD a deemed denial.

j. On 13 August 2021, USTRANSCOM notified MAEI that we have received a copy of the ASBCA order and intend to comply with the order to provide a COFD on or before 5 September 2021.

## 2. Pertinent contract terms:

a. USTRANSCOM USC-8 Contract HTC711-16-D-W014 contained the following relevant contract clauses and Performance Work Statement (PWS) provisions:

(1) Federal Acquisition Regulation (FAR) 52.212-4, Contract Terms And Conditions – Commercial Items (JUN 2010), which provided:

> (d) Disputes. This contract is subject to 41 U.S.C. Chapter 71, Contract Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(2) FAR 33.207, Contractor Certification, as relevant IAW 52.233-1, which states:

> (a) Contractors shall provide the certification specified in paragraph (c) of this section when submitting any claim exceeding $100,000.
>
> (b) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.
>
> (c) The certification shall state as follows:
>
> I certify that the claim is made in good faith; **that the supporting data are accurate and complete** to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

(3) Exhibit 3 PWS, Attachment 8, Special Provisions for DLA Prime Vendor Program Cargo, in general and specifically paragraphs 1.2, 1.2.1, 1.2.2 and 1.2.3, which state:

> **1.2 Contractual Intent**. Generally, the terms, conditions and prices of this contract shall apply equally to the transportation of both Government owned and non-Government owned cargo. For example, the standard of liability of a USC Contractor for loss/damage to cargo is the same in both situations. Also, compensation due the USC Contractor for detention of carrier containers, for port storage, for reefer maintenance, and other matters (see paragraph 1.6 below), is the same in both situations. However, experience has

demonstrated to the Government that certain matters are properly handled directly between a Prime Vendor and a USC Contractor (the real parties in interest) where non-Government cargo is involved. These matters include:

a) Claims procedures and claims dispute resolution procedures related to Prime Vendor cargo and Prime Vendor claims against a USC Contractor for loss/damage to Prime Vendor cargo;

b) USC Contractor claims against a Prime Vendor for loss/damage to USC Contractor equipment;

c) USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment;

d) USC Contractor claims against a Prime Vendor for port storage charges (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);

e) USC Contractor claims against a Prime Vendor for trucker wait time (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);

f) USC Contractor claims against a Prime Vendor for reefer maintenance (e.g., while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor); and,

g) Claims between the Prime Vendor and USC Contractor for services not ordered by the Government

This stands to reason because the DLA Prime Vendor owns the cargo and because only the Prime Vendor and a USC-8 Contractor have specific, factual knowledge and evidence related to such matters and the delivery location. DLA's Prime Vendor contracts involving the Pakistan / Afghanistan Ground Routes/lines of communication (PakGLOC) require the Prime Vendor to sign an agreement (which the USC-8 Contractor may accept and seek to supplement) establishing a minimum level of claims processing and dispute resolution procedures. The USTRANSCOM USC-8 contract requires the carrier to accept a minimum level agreement to be eligible for the carriage of Prime Vendor cargo over the PakGLOC. The contractual requirement is for the DLA Prime Vendor and the USTRANSCOM USC-8 Contractor to address/resolve such matters directly with each other. It's noted, the Government customer (warfighter/troops) can be harmed when procedures for resolving such matters between the DLA Prime Vendor and a USC-8 Contractor are not established and problems are not resolved directly between the DLA Prime Vendor and the USC-8 Contractor.

**1.2.1** The U.S. Government shall not be liable for loss or damage to Prime Vendor cargo. Any discrepancy report or notice of claim for such loss or damage shall be submitted by the DLA Prime Vendor directly to the USC Contractor for resolution, not to DLA or USTRANSCOM. The USC Contractor shall accept such discrepancy report or notice of

claim for such loss or damage from the DLA Prime Vendor, as well as any other communications regarding such loss or damage.

**1.2.2** The U.S Government shall not be liable for USC Contractor claims against a Prime Vendor for loss/damage to USC Contractor equipment; USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment; USC Contractor claims against a Prime Vendor for port storage charges (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor); USC Contractor claims against a Prime Vendor for trucker wait time (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor); USC Contractor claims against a Prime Vendor for reefer maintenance (e.g., while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor); and claims between the Prime Vendor and USC Contractor for services not ordered by the Government). The USC Contractor shall submit directly to the Prime Vendor, with copy to the USC Contracting Officer, any claim for damage, detention, port storage, reefer maintenance, or services not ordered by the U.S. Government. If the USC Contractor is unable to communicate directly with the Prime Vendor for any reason, the USC Contractor shall so advise the USC Contracting Officer. In those instances, or instances where the resolution of Prime Vendor / USC Carrier claims is at an impasse, the USC Contracting Officer will function (in coordination with other Government agencies as appropriate) as a facilitator in order to bring the parties together and work towards resolution of the claim(s).

**1.2.3** Notwithstanding the provisions of 1.2.2 above, the USC Contractor may pursue any rights it may have under this contract and may file a claim with the USC Contracting Officer under the terms of this contract in connection with the transportation of Prime Vendor cargo. An example of such a situation could be where Government action harms the USC Contractor with respect to Prime Vendor cargo transportation and some other part of this contract provides a remedy.


### 3. Statement of factual areas of agreement and disagreement

a. HTC711-12-D-W014 is the contract for Universal Services Contract (USC-8) services between USTRANSCOM) and MAEI. (Attachment 2) The contract includes specific requirements for shipments of DLA Prime Vendor cargo as identified in Attachment 8 of the PWS. MAEI and Anham have entered into the PV Agreement per the contract requirements. (Agreement)

b. Attachment 8 of the USC-8 contract established the contractual intent of the PV Agreement requirement is for the DLA Prime Vendor and USTRANSCOM USC-8 contractor to address and resolve matters directly with each other. (Agreement)

c. Paragraph 1.2.3 of Attachment 8 states the USC Contractor may pursue any rights it may have under this contract and may file a claim with the USC Contracting Officer under the terms of this contract in connection with the transportation of Prime Vendor cargo. An example of

such a situation could be where Government action harms the USC Contractor with respect to Prime Vendor cargo transportation and some other part of this contract provides a remedy. (Agreement)

d. MAEI stated in the subject claim they have not agreed to a contractual presumption they shall bear costs of delays they cannot prove were caused by the Prime Vendor, the Government or a third party (Attachment 1 at 3). (Disagreement) Paragraph 1.2.2, Attachment 8 of the USC-8 contract states the U.S. Government shall not be liable to the USC Contractor for claims against a Prime Vendor for various categories that are due to the fault or request of Prime Vendor.

e. MAEI stated in the subject claim, "Only the U.S. Government can identify the ultimate cause of the delay" (*ID* at 4). (Disagreement) The USC-8 contract is a commercial items contract, which requires the USC Contractor to deliver cargo from a point-to-point basis. The USC contractor has possession of the cargo throughout the entirety of the cargo shipment and the obligation to deliver the cargo per the terms of the contract. It is unreasonable to assume the U.S. Government could pinpoint the cause of delay for every shipment. It is also unreasonable to assume the U.S. Government could pinpoint delays of PV cargo as the USC Contractor and PV have frequent and constant communications with each other regarding the delivery of cargo. The U.S. Government has no insight into delays that may occur due to either the USC Contractor or PV's actions.

## 4. Contracting Officer's Decision and supporting rationale

a. The Contracting Officers Final Decision is to deny this certified claim in its entirety due to MAEI's failure to follow the provisions of the USC-8 contract (specifically outlined in Attachment 8 of the PWS – PV Agreement), a binding agreement on MAEI and the DLA PV Anham for handling disputes and claims. Furthermore, MAEI's certified claim submission fails to provide complete written supporting documentation showing US. Government causation/fault to facilitate claim adjudication and/or to validate calculations.

b. MAEI provided over 130 supporting documents with the subject claim, all of which were transferred to USTRANSCOM via DoD SAFE transfer. Upon receipt and review of the documentation, it was abundantly clear the documentation simply consisted of copies of invoices and Microsoft Excel spreadsheets that have been previously submitted to Anham throughout the USC-8 period of performance. The documentation included PDF invoices, spreadsheets with general data but no relevant supporting documentation to substantiate the claim. The claims are completely devoid of any evidence to support USTRANSCOM responsibility or substantiation to help adjudicate responsibility to DLA for Prime Vendor accountability.

c. When filing a claim, the burden of proof remains with the contractor to prove that the costs are reasonable and are accounted for appropriately. This burden includes providing records and relevant supporting documentation in support of the claim and providing adequate assurance that costs claimed have been incurred and are allocable to the contract. No presumption of reasonableness shall be attached to the incurrence of costs by a contractor. The claim should stand on its own and thus the government is not required to scour its databases to verify the

location rationale or amount to help substantiate the validity of the claim on the claimants' behalf. Furthermore, any documentation or supporting evidence that may be stored in a government shared database accessible to MAEI can and should be utilized by the claimant to substantiate and support a complete claim. To be clear, the burden of proof is on MAEI to substantiate its claims. As such, it is MAEI's responsibility and duty to provide a claim, that is accurate and complete in accordance with FAR 33.207(c) to demonstrate that the Government is liable for the claim.

  d. In this case, all of the documentation provided by MAEI for review fails to substantiate any U.S. Government causation. In other words, it is incomplete. Review of the invoices, spreadsheets and other documentation merely identifies an invoice that was likely submitted to Anham from MAEI. There is no further documentation as to whether the invoice was paid or denied nor any basis for which the costs were incurred. In fact, at least one invoice and supporting documentation submitted clearly identifies the Prime Vendor (or subcontractors of the Prime Vendor) are at fault. Invoice WN8AN1017 requests $510 in Exigency Driver Wait Time. The supporting document (Attachment 10, WN8AN1017 SD) includes an email from Anham that clearly identifies the causation is due to the warehouse and Anham agreed they could withhold the $510 from the subcontractor in a future payment. This invoice demonstrates the claim and supporting documentation is inaccurate and includes charges that are the responsibility of the PV.

  e. In addition to the lack of supporting documentation for entitlement, the amount claimed by MAEI, and the amounts of the invoices provided in support of the claims do not align. MAEI provided supporting documentation totaling $1,060,622.14 in outstanding invoices, yet the sum certain claimed is $748,402.32. This misalignment only complicates the review of the claim and further highlights the incomplete and unreasonable condition of the supporting documentation provided by MAEI. This lack of completeness prevents USTRANSCOM from substantiating any of portion of the claim.

  f. Notwithstanding the lack of completeness, this claim does not align or follow the terms and conditions of the USC-8 contract. The USC-8 contract specifically addresses claims or invoices between a DLA Prime Vendor and USTRANSCOM USC-8 Contractor for instances including:

> . . .USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment;
> USC Contractor claims against a Prime Vendor for port storage charges (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);
> USC Contractor claims against a Prime Vendor for trucker wait time (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor);
> USC Contractor claims against a Prime Vendor for reefer maintenance (e.g. while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor) . . .

These claims are supposed to be handled by the USC-8 contractor and the PV contractor, not the government. IAW Attachment 8, paragraph 1.2.2 these are claims that should be handled

8

between MAEI and the PV. MAEI's claim fails to substantiate the government action harmed the USC contractor with respect to PV cargo transportation. The charges in this claim include $546,762 in container detention, $296,007.31 in port storage, $2,310 in Exigency Driver Wait Time and $215,542.83 in reefer maintenance, each specifically identified in paragraph 1.2 as matters appropriate for handling between the USC-8 contractor and PV contractor. Again, MAEI has failed to provide supporting data that is accurate and complete to demonstrate government liability.

## 5. Final Decision

a. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail, or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

b. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the boards -

(1) Small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or

(2) Accelerated procedure for claims of $100,000 or less

c. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in 41 U.S.C. § 7102(d), regarding Maritime Contracts) within 12 months of the date you receive this decision.

FROST.CHRISTOPHER.TRUMAN.1283955229
Digitally signed by FROST.CHRISTOPHER.TRUMAN.1283955229
Date: 2021.09.03 13:15:07 -05'00'

Christopher T. Frost
Contracting Officer

Attachments:
1. MAEI certified claim dated 22 December 2020
2. HTC711-16-D-W014 Executed Contract
3. SPM300-10-D-3373, ANHAM FZCO, Iraq, Kuwait, Jordan
4. SPM300-12-D-3571, ANHAM FZCO Afghanistan
5. Prime Vendor Agreement dated 9 May 2013 between Maersk Line, Limited and Anham FZCO, LLC.
6. Prime Vendor Agreement dated 21January 2016 between Maersk Line, Limited and Anham FZCO, LLC.

7. MAEI (USC-8) Anham Claim Master Spreadsheet
8. 4-23-2021 MLL ASBCA Petition
9. 62905-PET Maersk Line Limited 8.6.21 Order
10. WN8AN1017 SD