

**UNITED STATES TRANSPORTATION COMMAND**
508 SCOTT DRIVE
SCOTT AIR FORCE BASE, ILLINOIS 62225-5357

3 September 2021

Maersk Line, Limited
2510 Walmer Avenue, Suite C
ATTN: Patrick McCaffery (Counsel)

SUBJECT: Contracting Officer's Final Decision Regarding Certified Claim, dated 25 March 2021; TCAQ-19-REA-0058; Contract HTC711-16-D-W014

Dear Mr. McCaffery,

This letter provides a Contracting Officer's Final Decision (COFD) regarding a Certified Claim (Attachment 1), submitted by Maersk Line, Limited (MAEI), dated 25 March 2021 in accordance with (IAW) FAR 52.233-1 Disputes (May 2014). The certified claim requests $9,030.00, for Container Detention "pursuant to (USC [Universal Services Contract]-8, Performance Work Statement (PWS), Attachment 8 Section 1.2.3, FAR 52.212-4(d) and DFARS 252.243-7002" for charges incurred on Prime Vendor (PV) cargo due to a delay in cargo transportation.

**1. Description of claim or dispute:**

    a. United States Transportation Command (USTRANSCOM) awarded Contract No. HTC711-16-D-W014 to MAEI for ocean and intermodal distribution services. The purpose of USC-8 was for delivering Defense Transportation System (DTS) cargo around the world (Attachment 2 at 63). DTS cargo consists of military equipment and related supplies including the shipment of Prime Vendor Cargo in support of the Defense Logistics Agency (DLA) Prime Vendor Program (*Id.* at 223).

    b. DLA entered into contracts SPM300-12-D-3595 (Attachment 3), SPE300-17-D-4027 (Attachment 4), SPE300-18-D-4042 (Attachment 5) and SPE300-19-D-4048 (Attachment 6), ("PV Contracts") with Nova Global Supply and Services LLC d/b/a Valiant Integrated Services LLC ("Valiant") for supply of various commodities to US. Government agencies. The Valiant contracts provided subsistence products to the U.S. military and other federally funded customers within South West Asia including United Arab Emirates (UAE), Oman, Djibouti and Kenya. The Valiant PV Contracts require the supplies provided under the contract to be shipped through the DTS.

    c. Due to the unique nature of PV Cargo shipments, both the USTRANSCOM USC-8 contract and the DLA PV Contracts have special provisions for the shipment of PV Cargo. See USC-8, Exhibit 3 PWS, Attachment 8, *Shipments of DLA Prime Vendor Cargo* along with the DLA PV Contracts, Statement of Work (SOW), Section IV, *Transportation.* Additionally, each

**Attachment 3**

2

of these contracts required MAEI and Valiant to enter into a Prime Vendor Agreement to establish a minimum level of claims processing and dispute resolution procedures. MAEI and Valiant entered into a PV Agreement, dated 1 February 2017 (Attachment 7). Thus, the USC-8 contract, PV Contracts and PV Agreement required MAEI and Valiant to resolve disputes between each other for charges associated with the shipment of PV cargo. Throughout the period of performance of USC-8, it appears that Valiant and MAEI complied with their PV Agreement in settling disputes and claims; however, they have failed to resolve these outstanding invoices for various charges. The charges submitted for this certified claim are disputed charges between Valiant and MAEI.

    d. On 7 April 2021, USTRANSCOM received a certified copy of the claim dated 25 March 2021 via hard copy. The claim was addressed to both USTRANSCOM (Contracting Officer William Henderson) and DLA Troop Support (Contracting Officers Tine Federico, Jamie Shuster and Katie Cosenza). According to MAEI, this claim had been previously submitted as a Request for Equitable Adjustment (REA), specifically REA80014.

    e. Upon review of the USC-8 contract file, the USTRANSCOM Directorate of Acquisition (TCAQ) office identified a previous REA submission with the same REA number and amount claimed. On 10 September 2019 TCAQ received the REA for container detention from MAEI in the amount of $9,030. TCAQ assigned this REA number TCAQ-19-REA-0058. On 2 January 2021, TCAQ denied the REA in full for lack of supporting documentation to identify causation of the delay (Attachment 8).

    f. On 29 July 2021, TCAQ received a request from MAEI for a response date on the Valiant Claim. On 3 August 2021, TCAQ responded and stated the intention was to release a COFD no later than 13 August 2021.

    g. On 13 August 2021, USTRANSCOM notified MAEI that we have received a copy of an ASBCA order related to separate contract claims filed by MAEI and intend to comply with the order to provide a COFD for the subject claim and separate claims on or before 5 September 2021.

**2. Pertinent contract terms:**

    a. USTRANSCOM USC-8 Contract HTC711-16-D-W014 contained the following relevant contract clauses and Performance Work Statement (PWS) provisions:

    (1) Federal Acquisition Regulation (FAR) 52.212-4, Contract Terms And Conditions – Commercial Items (JUN 2010), which provided:

> (d) Disputes. This contract is subject to 41 U.S.C. Chapter 71, Contract Disputes. Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes, which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final

resolution of any dispute arising under the contract.

(2) FAR 33.207, Contractor Certification, as relevant IAW 52.233-1, which states:

(a) Contractors shall provide the certification specified in paragraph (c) of this section when submitting any claim exceeding $100,000.

(b) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(c) The certification shall state as follows:

I certify that the claim is made in good faith; **that the supporting data are accurate and complete** to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

(3) Exhibit 3 PWS, Attachment 8, Special Provisions for DLA Prime Vendor Program Cargo, in general and specifically paragraphs 1.2, 1.2.1, 1.2.2 and 1.2.3, which state:

**1.2 Contractual Intent.** Generally, the terms, conditions and prices of this contract shall apply equally to the transportation of both Government owned and non-Government owned cargo. For example, the standard of liability of a USC Contractor for loss/damage to cargo is the same in both situations. Also, compensation due the USC Contractor for detention of carrier containers, for port storage, for reefer maintenance, and other matters (see paragraph 1.6 below), is the same in both situations. However, experience has demonstrated to the Government that certain matters are properly handled directly between a Prime Vendor and a USC Contractor (the real parties in interest) where non-Government cargo is involved. These matters include:

a) Claims procedures and claims dispute resolution procedures related to Prime Vendor cargo and Prime Vendor claims against a USC Contractor for loss/damage to Prime Vendor cargo;

b) USC Contractor claims against a Prime Vendor for loss/damage to USC Contractor equipment;

c) USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment;

d) USC Contractor claims against a Prime Vendor for port storage charges (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);

e) USC Contractor claims against a Prime Vendor for trucker wait time (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);

f) USC Contractor claims against a Prime Vendor for reefer maintenance (e.g., while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor); and,

g) Claims between the Prime Vendor and USC Contractor for services not ordered by the Government

This stands to reason because the DLA Prime Vendor owns the cargo and because only the Prime Vendor and a USC-8 Contractor have specific, factual knowledge and evidence related to such matters and the delivery location. DLA's Prime Vendor contracts involving the Pakistan / Afghanistan Ground Routes/lines of communication (PakGLOC) require the Prime Vendor to sign an agreement (which the USC-8 Contractor may accept and seek to supplement) establishing a minimum level of claims processing and dispute resolution procedures. The USTRANSCOM USC-8 contract requires the carrier to accept a minimum level agreement to be eligible for the carriage of Prime Vendor cargo over the PakGLOC. The contractual requirement is for the DLA Prime Vendor and the USTRANSCOM USC-8 Contractor to address/resolve such matters directly with each other. It's noted, the Government customer (warfighter/troops) can be harmed when procedures for resolving such matters between the DLA Prime Vendor and a USC-8 Contractor are not established and problems are not resolved directly between the DLA Prime Vendor and the USC-8 Contractor.

**1.2.1** The U.S. Government shall not be liable for loss or damage to Prime Vendor cargo. Any discrepancy report or notice of claim for such loss or damage shall be submitted by the DLA Prime Vendor directly to the USC Contractor for resolution, not to DLA or USTRANSCOM. The USC Contractor shall accept such discrepancy report or notice of claim for such loss or damage from the DLA Prime Vendor, as well as any other communications regarding such loss or damage.

**1.2.2** The U.S Government shall not be liable for USC Contractor claims against a Prime Vendor for loss/damage to USC Contractor equipment; USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment; USC Contractor claims against a Prime Vendor for port storage charges (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor); USC Contractor claims against a Prime Vendor for trucker wait time (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor); USC Contractor claims against a Prime Vendor for reefer maintenance (e.g., while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor); and claims between the Prime Vendor and USC Contractor for services not ordered by the Government). The USC Contractor shall submit directly to the Prime Vendor, with copy to the USC Contracting Officer, any claim for damage, detention, port storage, reefer maintenance, or services not ordered by the U.S. Government. If the USC Contractor is unable to communicate directly with the Prime Vendor for any reason, the USC Contractor shall so advise the USC Contracting Officer. In those instances, or instances where the resolution of Prime Vendor / USC Carrier claims is at an impasse, the USC Contracting Officer will function

5

(in coordination with other Government agencies as appropriate) as a facilitator in order to bring the parties together and work towards resolution of the claim(s).

**1.2.3** Notwithstanding the provisions of 1.2.2 above, the USC Contractor may pursue any rights it may have under this contract and may file a claim with the USC Contracting Officer under the terms of this contract in connection with the transportation of Prime Vendor cargo. An example of such a situation could be where Government action harms the USC Contractor with respect to Prime Vendor cargo transportation and some other part of this contract provides a remedy.

## 3. Statement of factual areas of agreement and disagreement

a. HTC711-12-D-W014 is the contract for Universal Services Contract (USC-8) services between USTRANSCOM) and MAEI. (Attachment 2) The contract includes specific requirements for shipments of DLA Prime Vendor cargo as identified in Attachment 8 of the PWS. MAEI and Valiant have entered into the PV Agreement per the contract requirements. (Agreement)

b. Attachment 8 of the USC-8 contract established the contractual intent of the PV Agreement requirement is for the DLA Prime Vendor and USTRANSCOM USC-8 contractor to address and resolve matters directly with each other. (Agreement)

c. Paragraph 1.2.3 of Attachment 8 states the USC Contractor may pursue any rights it may have under this contract and may file a claim with the USC Contracting Officer under the terms of this contract in connection with the transportation of Prime Vendor cargo. An example of such a situation could be where Government action harms the USC Contractor with respect to Prime Vendor cargo transportation and some other part of this contract provides a remedy. (Agreement)

d. MAEI stated in the subject claim they propose mediation or another non-binding alternative dispute resolution to resolve this claim and USTRANSCOM should be a participant because "of its exclusive access to much of the information that is needed to resolve these claims". (Disagreement). USTRANSCOM and MAEI have shared access to all relevant data as the supporting documentation may be located in US Government systems in which MAEI has full access to the documentation.

## 4. Contracting Officer's Decision and supporting rationale

a. The Contracting Officers Final Decision is to deny this certified claim in its entirety due to MAEI's failure to follow the provisions of the USC-8 contract (specifically outlined in Attachment 8 of the PWS – PV Agreement), a binding agreement on MAEI and the DLA PV Valiant for handling disputes and claims. Furthermore, MAEI's certified claim submission fails to provide complete written supporting documentation showing US. Government causation/fault to facilitate claim adjudication and/or to validate calculations.

6

b. MAEI provided supporting documents with the subject claim in the initial submission via hardcopy mail and incorporated the supporting documentation of TCAQ-19-REA-0058 by reference (Attachment 1 at 3). Upon receipt and review of the documentation, it was clear the documentation simply consisted of printed hard copies of Microsoft Excel spreadsheets that more than likely had been previously submitted to Valiant. Additionally, the documentation included spreadsheets with general data but no relevant supporting documentation to substantiate the claim. While MAEI did include some additional email communications with the submission, there was no evidence to support the causation of the delay was US Government caused beyond what was provided in support of TCAQ-19-REA-0058. The claim completely lacks any evidence to support USTRANSCOM responsibility or substantiation to help adjudicate responsibility to DLA for Prime Vendor accountability.

c. When filing a claim, the burden of proof remains with the contractor to prove that the costs are reasonable and are accounted for appropriately. This burden includes providing records and relevant supporting documentation in support of the claim and providing adequate assurance that costs claimed have been incurred and are allocable to the contract. No presumption of reasonableness shall be attached to the incurrence of costs by a contractor. The claim should stand on its own and thus the government is not required to scour its databases to verify the location rationale or amount to help substantiate the validity of the claim on the claimants' behalf. Furthermore, any documentation or supporting evidence that may be stored in a government shared database accessible to MAEI can and should be utilized by the claimant to substantiate and support a complete claim. To be clear, the burden of proof is on MAEI to substantiate its claims. As such, it is MAEI's responsibility and duty to provide a claim, that is accurate and complete in accordance with FAR 33.207(c) to demonstrate that the Government is liable for the claim.

d. In this case, all of the documentation provided by MAEI for review fails to substantiate any U.S. Government causation. In other words, it is incomplete. Review of the invoices, spreadsheets and other documentation merely identifies an invoice that was submitted to Valiant from MAEI and Valiant allegedly denied the invoice.

e. Notwithstanding the lack of completeness, this claim does not align or follow the terms and conditions of the USC-8 contract. The USC-8 contract specifically addresses claims or invoices between a DLA Prime Vendor and USTRANSCOM USC-8 Contractor for instances including:

> . . .USC Contractor claims against a Prime Vendor for detention of USC Contractor equipment;
> USC Contractor claims against a Prime Vendor for port storage charges (e.g., while cargo delayed through fault of Prime Vendor or request of Prime Vendor);
> USC Contractor claims against a Prime Vendor for trucker wait time (e.g. while cargo delayed through fault of Prime Vendor or request of Prime Vendor);
> USC Contractor claims against a Prime Vendor for reefer maintenance (e.g. while reefer in custody of Prime Vendor, or cargo delayed through fault of Prime Vendor or request of Prime Vendor) . . .

7

These claims are supposed to be handled by the USC-8 contractor and the PV contractor, not the government. IAW Attachment 8, paragraph 1.2.2 these are claims that should be handled between MAEI and the PV. MAEI's claim fails to substantiate the government action harmed the USC contractor with respect to PV cargo transportation. The charges in this claim include $9,030 in container detention which is specifically identified in paragraph 1.2 as matters appropriate for handling between the USC-8 contractor and PV contractor. Again, MAEI has failed to provide supporting data that is accurate and complete to demonstrate government liability.

    f.  Finally, TCAQ reviewed the REA that was previously submitted in its entirety in support of this claim. TCAQ notes the reason for the REA denial was conveyed to MAEI, specifically to Mr. Daniel Burns between 17 December 2019 and 27 December 2019 (Attachment 9). In those communications, TCAQ identified the REA did not include the root cause of the delay and requested additional information to identify whether the delays were caused by the U.S. Government and not either MAEI or Valiant. Both in the REA and the certified claim, MAEI has failed to identify the root cause of the delay, the actions taken to mitigate the delay or the reason why the TCAQ is responsible for the delay. Even though TCAQ asked for specific information related to the customs process and requested additional details, the information was not provided. On 27 December 2019, Mr. Burns confirmed the specific information was not available and agreed with the REA denial, while reserving the right to resubmit a new REA. TCAQ has not received a revised REA and does not agree this certified claim addresses the root cause of the delay or indicates how the U.S. Government is responsible.

## 5. Final Decision

    a.  This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail, or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

    b.  With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the boards -

        (1) Small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or

        (2) Accelerated procedure for claims of $100,000 or less

    c.  Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in 41 U.S.C. § 7102(d), regarding Maritime Contracts) within 12 months of the date you receive this decision.

FROST.CHRISTOPHER.TRUMAN.1283955229
Digitally signed by FROST.CHRISTOPHER.TRUMAN.1283955229
Date: 2021.09.03 14:23:50 -05'00'

Christopher T. Frost
Contracting Officer

Attachments:
1. MAEI certified claim dated 25 March 2021
2. HTC711-16-D-W014 Executed Contract
3. SPM300-12-D-3595, Valiant LLC, Southwest Asia
4. SPE300-17-D-4027, Valiant LLC, Southwest Asia, Bridge Contract # 1
5. SPE300-18-D-4042, Valiant LLC, Southwest Asia, Bridge Contract # 2
6. SPE300-19-D-4048, Valiant LLC, Southwest Asia, Bridge Contract # 3
7. Prime Vendor Agreement dated 01 February 2017 between Maersk Line, Limited and Nova Global Supply & Services, LLC (dba Valiant Integrated Services LLC)
8. PNM – TCAQ-19-REA-0058
9. Email subject: REA 80014 Disputed PV Valiant Detention